Marcus Andre MICHAEL,
Petitioner–Appellant,

v.

IMMIGRATION AND NATURAL-
IZATION SERVICE, Respon-
dent–Appellee.

Docket No. 94–6240.

United States Court of Appeals,
Second Circuit.

Submitted Nov. 22, 1994.

Decided Feb. 16, 1995.

Marcus A. Michael, pro se.

James A. O'Brien, III, Sp. Asst. U.S. Atty., New York City (Mary Jo White, U.S. Atty., for the S.D.N.Y., Steven M. Haber, Asst. U.S. Atty., on the brief), for appellee.

Before JACOBS, CALABRESI, and PARKER, Circuit Judges.

CALABRESI, Circuit Judge:

Petitioner, Marcus Andre Michael ("Michael"), appeals *pro se* from an order of the United States District Court for the Southern District of New York (Koeltl, J.) transferring his petition for a writ of *habeas corpus* (by which he sought to stay his imminent deportation) to the United States District Court for the Western District of Louisiana. 870 F.Supp. 44. Michael also requests that this Court grant a stay of deportation. We dismiss Michael's appeal insofar as it relates to his petition for *habeas* relief for lack of appellate jurisdiction. We, however, grant his application for a stay pending the Board of Immigration Appeals' ("BIA's") review of the Immigration Judge's ("IJ's") denial of Michael's motion to reopen his deportation proceedings. Should the BIA affirm the IJ's refusal to reopen the deportation proceed-

ings, our stay will remain in effect in order to permit Michael to seek review in this Court of the BIA's decision.

## BACKGROUND

Michael is a native and citizen of Guyana. He was admitted to the United States as a lawful permanent resident on August 2, 1985. When the Immigration and Naturalization Service ("INS") first took Michael into custody in connection with the current deportation proceedings in June 1994, he resided in Brooklyn, New York.

On February 23, 1994, Michael pleaded guilty before the Supreme Court of the State of New York, Kings County, to criminal possession of a weapon in the third degree. *See* N.Y.Penal Law § 265.02. After sentencing, Michael was jailed for 90 days in the Correctional Institution for Men in East Elmhurst, New York. Upon Michael's release from state prison in May 1994, the INS ordered him to show cause why he should not be deported, charging that he was deportable pursuant to section 241(a)(2)(C) of the Immigration and Nationality Act of 1952, as amended, which provides:

> Any alien who at any time after entry is convicted under any law of purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying in violation of any law, any weapon, part, or accessory which is a firearm or destructive device (as defined in section 921(a) of Title 18) is deportable.

8 U.S.C. § 1251(a)(2)(C).

In June 1994, the INS ordered Michael to report for detention at the Federal Detention Center in Oakdale, Louisiana. On June 13, 1994, he was released from INS custody upon posting a $10,000 bond and he returned home to Brooklyn. On July 7, 1994, Michael's New York attorney sent to the IJ in Oakdale, by express mail, a motion for a change of venue, together with supporting papers raising Michael's eligibility for a waiver of deportation pursuant to section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c) (1994). For some unexplained reason, the IJ did not receive these materials until July 13, 1994—one day after

he issued Michael's order of deportation. The record reflects, however, that on July 12, 1994—the same day that the IJ ordered Michael deported—Michael's attorney spoke with the IJ, notified him that the July 7th motion papers were in transit, and requested that he either briefly postpone his decision or that he consider an oral motion for a change of venue. The IJ denied both requests.

Michael did not appeal the deportation order to the BIA because his motion raising the request for section 212(c) relief was not part of the administrative record upon which that order was based. Instead, Michael, through counsel, filed a motion with the IJ to reopen the deportation proceedings so that he might apply for a section 212(c) waiver of deportation. Michael also requested a stay of deportation and a change of venue to New York City.[1] He argued that a case pending before the BIA, *Matter of Esposito (see Esposito v. INS*, 987 F.2d 108 (2d Cir.1993)), would establish his eligibility for section 212(c) relief from deportation.

On August 19, 1994, the IJ denied the motions to reopen, to stay the deportation, and for a change of venue. On August 23, 1994, the INS District Director issued Michael a notice to surrender for deportation in Oakdale, Louisiana on September 26, 1994. The following day, August 24, 1994, Michael appealed the IJ's August 19th decision to the BIA and, pending his administrative appeal, requested a stay of deportation from both the INS District Director and the BIA. On August 30, 1994, the INS acknowledged receipt of Michael's application for a stay, and informed him that it would take between 30 and 180 days to process his request. Under the circumstances, Michael might well have been deported before the INS passed upon his application for a stay.

On September 12, 1994, Michael, acting *pro se*,[2] filed the current petition for *habeas corpus* relief in the United States District Court for the Southern District of New York, seeking to enjoin the INS from deporting him prior to the resolution of his administrative appeal. Michael claimed that the district court should stay his deportation because his underlying request for section 212(c) relief raised a non-frivolous constitutional issue that had not yet been decided by the Second Circuit, *see Esposito v. INS*, 987 F.2d 108, 111–12 (2d Cir.1993) (per curiam) (remanding to the BIA for initial consideration whether, in light of equal protection concerns, aliens with firearms convictions are eligible for section 212(c) relief), and because the IJ had abused his discretion in denying Michael's motion to reopen his administrative proceedings and in denying his request for a stay. Concluding that he did not have jurisdiction to entertain Michael's *habeas* petition, on September 19, 1994, Judge Koeltl transferred these proceedings pursuant to 28 U.S.C. § 1406(a) to the United States District Court for the Western District of Louisiana. Two days later, Michael filed a notice of appeal in the Southern District of New York and a *pro se* application for a stay of deportation in this Court.

On September 22, 1994, Judge Miner of this Court granted a temporary stay of deportation in order to permit the United States Attorney for the Western District of Louisiana to show cause why a stay should not be granted by that court pending Michael's administrative appeal. That same day, Judge Trimble of the Western District of Louisiana denied Michael's petition for *habeas* relief. On September 23, 1994, Judge Miner vacated his stay and declined to grant another one until a three-judge panel of this Court addressed Michael's appeal. On October 5, 1994, the INS District Director denied

---

1. The dissent argues that Michael strategically forewent his opportunity to request section 212(c) relief in his motion to reopen in order to seek a change of venue from Louisiana to his home state of New York. *See* Dissent at pps. 3–4 & n. 2. Michael's attorney did request a venue change in his motion papers, as he was entitled to do. But as the IJ's written decision makes indisputably clear, Michael also "filed a motion to reopen deportation proceedings in order to request relief from deportation under § 212(c) of

the Immigration and Nationality Act of 1990." Order of the Immigration Judge at 1, August 19, 1994.

2. The dissent's repeated suggestions to the contrary notwithstanding, there is simply no indication in the record that Michael had the assistance of counsel at anytime during this or any subsequent proceedings.

Michael's administrative stay application, as did the BIA on November 7, 1994.

Michael's *pro se* appeal from the district court's transfer order and his application for a stay of deportation were submitted for decision to this panel on November 22, 1994. On November 30, 1994, a panel majority, Judge Jacobs dissenting, entered an order granting Michael a temporary stay of deportation and inviting the INS to submit briefs addressing

> why a stay of deportation should not issue, and specifically addressing the authority of this Court under the All Writs Act, 28 U.S.C. § 1651, to issue such a stay to protect this Court's jurisdiction to hear any subsequent appeal that the petitioner-appellant might take from an adverse ruling of the BIA.[3]

## DISCUSSION

### A. *Michael's Appeal from the District Court's Transfer Order*

■ Having considered the tortured and tortuous history of this case, we conclude that Judge Koeltl's decision to transfer Michael's petition to the Western District of Louisiana, a court that admittedly had jurisdiction over his petition, is an interlocutory order that is unappealable absent the necessary district court certification. *Cf. Chapple v. Levinsky,* 961 F.2d 372, 374 (2d Cir.1992) (per curiam) (section 1404(a) transfer is an interlocutory order that requires district court certification under 28 U.S.C. § 1292(b) for immediate appellate review); *Kotlicky v. United States Fidelity & Guaranty Co.,* 817 F.2d 6, 7 n. 1 (2d Cir.1987). Because Judge Koeltl did not stay the execution of his transfer order and certify the question of whether the transfer of Michael's *habeas* petition to the Western District of Louisiana was appropriate, we dismiss Michael's appeal from that order for want of appellate jurisdiction.

### B. *Michael's Application for a Stay of Deportation*

■ Michael's request for a stay of deportation, however, is another matter. His application raises the question of whether, in extraordinary cases, the All Writs Act provides a federal court of appeals with an independent statutory basis to stay a deportation order. We hold that it does.

### 1. *Jurisdiction*

■ The Immigration Act goes far to insure that aliens may obtain judicial review of final deportation orders. The statute provides that an alien may obtain such review in the court of appeals for the judicial circuit in which the administrative proceedings occurred or the judicial circuit of the alien's residence. *See* 8 U.S.C. § 1105a(a)(2). Furthermore, this jurisdiction is both direct and exclusive in the court of appeals. *See Garay v. Slattery,* 23 F.3d 744, 745 (2d Cir.1994).

Upon the timely filing of an alien's petition to review a final deportation order, and absent an aggravated felony conviction, an alien's deportation is automatically stayed pending review of that petition by the court of appeals. *See* 8 U.S.C. § 1105a(a)(3). In the event that an alien has been convicted of an aggravated felony, he or she may still seek a stay of deportation from the reviewing court, but such relief is discretionary. *Id.; see also Rabiu v. INS,* 41 F.3d 879, 881 (2d Cir.1994) (discretionary stay of deportation granted to aggravated felon in order to adjudicate BIA's denial of alien's motion to reopen proceedings for section 212(c) consideration).

■ Where an alien does not directly seek review of a final deportation order in the court of appeals, but instead moves to reopen his or her administrative deportation proceedings, the automatic stay described above will not take effect until after the

---

**3.** Our November 30th order also vacated an order entered the previous day granting Michael a stay of deportation through this Court's review of any adverse BIA ruling. Due to an inadvertent miscommunication, the panel believed that the INS had opted not to respond to Michael's application for a stay. After the panel majority granted its initial stay on November 29th, the INS

advised the Court that it had been under the mistaken impression that Judge Miner had finally disposed of the case when he vacated his temporary stay on September 23rd. In light of this confusion, we thought that the INS should have an opportunity to state its position fully. We therefore vacated our earlier stay, and set a briefing schedule for the INS to respond.

motion to reopen has been adversely determined and the alien timely seeks judicial review. *See Vlassis v. INS*, 963 F.2d 547, 548 (2d Cir.1992) (per curiam) (motion to reopen does not stay the execution of a deportation order); 8 C.F.R. § 3.8(a) (1994). Consequently, in order to avoid the possibility of deportation during the pendency of a motion to reopen, an alien must try to obtain a discretionary stay of deportation from an IJ, a local INS District Director, or the BIA. *See Vlassis*, 963 F.2d at 548 ("Absent such a stay, [an alien] might [be] deported before his request to reopen was granted."); 8 C.F.R. §§ 3.6(b), 3.8(a) (1994) (authorizing BIA to grant a stay); 8 C.F.R. § 242.22 (1994) (authorizing IJ to grant a stay); 8 C.F.R. § 243.4 (1994) (authorizing INS District Director to grant a stay). Because the denial of a discretionary stay by an IJ or the BIA pending the disposition of a motion to reopen can be appealed only in conjunction with a final order of deportation, *see Garay* 23 F.3d at 746, only a stay application to an INS District Director carries with it the promise of immediate judicial review. An alien may challenge an INS District Director's denial of a stay of deportation by petitioning a federal district court for *habeas corpus* relief. *See id.* at 745–46; 8 U.S.C. § 1105(a)(10).

This case, however, falls between the statutory cracks. Because the IJ refused to await the belated express mail delivery of Michael's motion papers before ordering him deported, Michael had no choice but to seek the reopening of his administrative proceedings in order to raise his section 212(c) claim. *See* 8 C.F.R. § 242.17(e) (1994) (application for section 212(c) relief "shall be made only during the [deportation] hearing"). This necessarily prohibited Michael from invoking the statute's automatic stay provision at that juncture. *See Vlassis*, 963 F.2d at 548. Similarly, under the unique circumstances of this case, Michael was effectively deprived of the statutory safety net that permits an alien to challenge an INS District Director's denial of a discretionary stay by way of *habeas* relief.

*See Garay*, 23 F.3d at 745–46; 8 U.S.C. § 1105(a)(10).

While at home in Brooklyn on bonded release, and following notification that the INS District Director would not act upon his application for a discretionary stay until *after* his scheduled deportation date, Michael sought to enjoin his imminent deportation by filing a *pro se habeas corpus* petition in the Southern District of New York. Concluding that he lacked jurisdiction to entertain the petition, Judge Koeltl transferred it to the United States District Court for Western District of Louisiana. Judge Trimble of that court then summarily denied Michael *habeas* relief on the grounds that he "failed to meet all of the requisite criteria for obtaining a stay of deportation." [4] Judge Trimble's ruling was not surprising in light of the fact that the Fifth Circuit—the court of appeals that has binding authority over the federal district courts in Louisiana—had previously held that weapons-related deportees were ineligible for section 212(c) relief. *See Rodriguez v. INS*, 9 F.3d 408, 412–13 (5th Cir. 1993). Once Michael's *habeas* petition was transferred to the Fifth Circuit, the law of that circuit precluded any hope of success on the merits of his underlying request for a section 212(c) relief. Understandably, as far as the courts of the Fifth Circuit were concerned, he did not merit a stay of deportation.

This bleak legal prognosis, however, did not reflect the section 212(c) state of affairs in the Second Circuit at the time that Michael first petitioned for *habeas* relief—nor does it reflect the status of section 212(c) law in the Second Circuit today. As Michael has consistently argued before the IJ, the INS District Director, the BIA, and the federal district courts in both New York and Louisiana, the question of whether weapons violators are eligible for section 212(c) relief remains open in this Circuit. *See Esposito*, 987 F.2d at 111–12. Moreover, on review from any adverse determination of the BIA that turns on the section 212(c) relief issue, Mi-

---

4. The necessary criteria referred to by the district court are those set forth by the Fifth Circuit in *Ignacio v. INS*, 955 F.2d 295, 299 (5th Cir.1992) (likelihood of success on the merits; irreparable harm to the movant absent a stay; the potential harm to the movant outweighs the harm to the INS if the stay is not granted; and granting the stay would serve the public interest).

chael has the statutory right to press his claim for such relief before this Court. *See* 8 U.S.C. § 1105a(a)(2); *see also Rosendo–Ramirez v. INS,* 32 F.3d 1085, 1091–94 (7th Cir.1994) (although alien had been both apprehended and administratively processed in the Fifth Circuit, venue for review of BIA deportation order was proper in the Seventh Circuit as the judicial circuit of the alien's residence, and the Seventh Circuit applied its own law on appeal); *Maldonado–Cruz v. INS,* 883 F.2d 788, 790–91 (9th Cir.1988) (although alien's deportation proceedings had occurred in the Fifth Circuit, venue for review of BIA deportation order was proper in the Ninth Circuit as the judicial circuit of the alien's residence, and the Ninth circuit applied its own law on appeal).

From the outset of his administrative proceedings, Michael's intention to litigate his deportation in this the judicial circuit of his residence [5] has been manifest. On several occasions, he moved for a change of venue from Louisiana to New York. He also specifically invoked this Court's jurisdiction when he appealed Judge Koeltl's transfer of his *habeas* petition and additionally requested a stay of deportation pending his administrative appeal. In light of Michael's stated desire to have this Court review his deportation appeal, and given his statutory right to obtain such review by this Court provided that he is not deported first, we conclude that our appellate jurisdiction in this case is both at issue and at risk.

The All Writs Act provides in relevant part:

> The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usage and principles of law.

28 U.S.C. § 1651(a). In construing this statutory grant of power, the Supreme Court has held that "the authority of the appellate court 'is not confined to the issuance of writs in aid of a jurisdiction already acquired by appeal but extends to those cases which are within its appellate jurisdiction although no appeal has been perfected.'" *FTC v. Dean Foods Co.,* 384 U.S. 597, 603–04, 86 S.Ct. 1738, 1174, 16 L.Ed.2d 802 (1966) (quoting *Roche v. Evaporated Milk Ass'n,* 319 U.S. 21, 25, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943)); *see also Sheehan v. Purolator Courier Corp.,* 676 F.2d 877, 884 (2d Cir.1981) ("if the court eventually will have jurisdiction of the substantive claim and an administrative tribunal has preliminary jurisdiction, the court has incidental jurisdiction to grant temporary relief to preserve the status quo pending the ripening of the claim for judicial action on the merits"), *cert. denied,* 488 U.S. 891, 109 S.Ct. 226, 102 L.Ed.2d 216 (1988).

The Third Circuit has twice noted that, in extraordinary cases, a court of appeals may invoke its injunctive powers under the All Writs Act so as to preserve its potential jurisdiction to review orders of deportation. *See Reid v. INS,* 766 F.2d 113, 116 n. 9 (3d Cir.1985); *Dabone v. Karn,* 763 F.2d 593, 597 n. 2 (3d Cir.1985). As that court aptly stated in *Reid:*

> It may sometimes happen that an alien will be unsuccessful in gaining a stay of deportation from either the BIA or the district director and will be deported before the BIA has ruled finally on the motion to reopen. Furthermore, it may well be that the motion to reopen will be ... mooted following the alien's departure from the United States.... [But] we note the possibility that in extraordinary cases relief in the nature of a stay might be available in the court of appeals pursuant to the All Writs Act[ ] ... to correct what might, under the facts of the case, be an egregious denial of discretionary relief.

*sario v. INS,* 962 F.2d 220, 224 (2d Cir.1992). For the purpose of applying section 1105a(a)(2)'s venue provisions, we do not think that Michael's good faith compliance with the INS's order to leave New York (his established abode for both personal and business reasons since 1985) and to report for pre-deportation detention in Louisiana affected his status as a Second Circuit resident.

---

**5.** Under the Immigration Act, "[t]he term 'residence' means the place of general abode; the place of general abode of a person means his [or her] *principal,* actual dwelling place in fact, without regard to intent." 8 U.S.C. § 1101(a)(33) (emphasis added). We have previously described the term residency—as used in the immigration context—as "an established abode, for personal or business reasons, permanent for a time." *Ro-*

766 F.2d at 116–17 n. 9 (citing, *inter alia, Dean Foods Co.* 384 U.S. at 603–05, 86 S.Ct. at 1742–43).

■ We agree with the Third Circuit's observations and find them to be directly applicable to this case. Accordingly, we conclude that as "a residual source of authority to issue writs that are not otherwise covered by statute," *Pennsylvania Bureau of Correction v. United States Marshals Serv.,* 474 U.S. 34, 43, 106 S.Ct. 355, 361, 88 L.Ed.2d 189 (1985), the All Writs Act empowers federal courts of appeal to stay orders of deportation in order to safeguard the court's appellate jurisdiction.

### 2. *Merits*

■ Of course, the simple fact that jurisdiction exists here does not necessarily mean that we should exercise our powers under it. In determining whether to grant a discretionary stay of deportation under the All Writs Act, we are guided by the same criteria that generally govern the issuance of discretionary stays.[6] Thus, we must consider whether: (1) Michael will suffer irreparable injury absent a stay; (2) the INS will suffer substantial injury if the stay is issued; (3) Michael has demonstrated a substantial possibility, though less than a likelihood, of success on appeal; and whether (4) the public interest may be affected. *See Jenkins v. INS,* 32 F.3d 11, 14–15 (2d Cir.1994).

A stay to preserve the jurisdiction of this Court, and to enable Michael to argue his section 212(c) claim before this Court—in the circuit of his residence as is his right under the Immigration Act—is fully justified. Absent a stay, Michael would suffer irreparable

injury through deportation, thereby mooting this case. Conversely, we can see no significant injury to the INS in this case should we grant a stay.

■ Furthermore, assuming that Michael is not first deported, that the BIA adversely determines his administrative appeal, and that Michael brings an appeal in this Circuit, this Court will examine the underlying issue upon which all else in this case ultimately turns—the availability of section 212(c) relief for firearms violators *under Second Circuit law. See Rosendo–Ramirez,* 32 F.3d at 1094 (holding that a circuit court of appeals is "obliged to review the BIA's decision in accordance with [its] own law" despite the fact that the underlying administrative proceedings applied the law of another circuit).

■ There is no doubt that Michael properly preserved the issue for review by this Court; he raised it in timely fashion in papers mailed to the IJ prior to the IJ's initial decision, and again in his motion to reopen and for a stay. There is also no doubt that Michael's well-preserved section 212(c) claim is a non-frivolous one of constitutional dimension, *see Esposito,* 987 F.2d at 111 (discussing *Francis v. INS,* 532 F.2d 268 (2d Cir. 1976)), which neither the Supreme Court nor this Circuit has addressed. The Ninth Circuit has held that where an alien "raises a non-frivolous constitutional issue yet undecided by our circuit or the Supreme Court," it is an abuse of discretion to deny that alien a stay of deportation pending review of an IJ's refusal to reopen administrative proceedings. *Blancada v. Turnage,* 891 F.2d 688, 690 (9th Cir.1989) (after denying an alien's motion to reopen, the IJ, INS District Director, and

---

**6.** *The dissent's denomination of our stay order as a "writ of prohibition," Dissent at p. 668, and its further assertion that, as such, it requires a stricter standard for issuance than the one we now apply, see id. at p. 671, is, we believe, mistaken. Our decision imposes neither a mandamus nor a prohibition order, both of which finally dispose of substantive claims in a piecemeal fashion and therefore understandably require petitioners to demonstrate a "clear and indisputable right" to relief. See Kerr v. United States District Court, 426 U.S. 394, 403, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725 (1976). Nothing in Michael's case is finally resolved by the temporary postponement of his deportation. For this*

reason we agree with the views of then-Judge Scalia regarding the appropriate requirements for issuing an All Writs stay of an administrative order:

> Besides the preliminary condition distinctive to All Writs relief [that the statutory prescribed remedy is clearly inadequate], ... the [request for a stay] must also satisfy the normal requirements, so to speak, for all extraordinary relief—i.e., the well established requirements that we routinely apply to motions for stay pending appeal, among which is the likelihood of irreparable harm.

*Reynolds Metals Co. v. F.E.R.C.,* 777 F.2d 760, 762 (D.C.Cir.1985).

BIA abused their discretion by refusing to grant a stay of deportation that would allow an alien to litigate fully his colorable due process challenge to statutory restrictions on obtaining marital "relative" or "preference status").

We reached an analogous conclusion in *Anderson v. McElroy*, 953 F.2d 803 (2d Cir. 1992) where we held, in a *habeas* context, that the BIA had abused its discretion by refusing to grant a stay of deportation in order to allow an alien to litigate fully the denial of his motion to reopen his deportation proceedings. *See id.* at 806.[7] In particular, we determined that the BIA's failure to give adequate consideration to the merits of the alien's section 212(c) request before denying both his motion to reopen and his application for a discretionary stay constituted an abuse of discretion *in denying the stay. Id.* Here, despite Michael's repeated arguments to both the IJ and the BIA that he may become eligible for section 212(c) relief in the Second Circuit, neither the IJ nor the BIA addressed this point in denying Michael's applications for a discretionary stay. And, as we stated in *Anderson:*

> [w]hen faced with cursory, summary or conclusory statements from the BIA, we cannot presume anything other than ... an abuse of discretion, since "the BIA's denial of relief can be affirmed only on the basis articulated in the decision ... and we cannot assume that the BIA considered the factors that it failed to mention in its decision."

*Id.* (quoting *Mattis v. INS*, 774 F.2d 965, 967 (9th Cir.1985) (citation omitted)).

We adhere to that view today. Michael's application for a stay of deportation should have been granted by the IJ because this Circuit would have granted such a stay to permit Michael to argue the open section 212(c) question. *See e.g. Gordon v. INS*, 36 F.3d 249 (2d Cir.1994) (per curiam) (staying alien's deportation pending BIA's disposition of the *Esposito* remand where INS issued a deportation notice). *Jenkins*'s third criterion for the issuance of a discretionary stay at this time is more than met.[8]

Finally, we also believe that it is in the public interest for this Court to resolve the open section 212(c) question in an orderly manner that is even-handed to all potentially affected aliens who reside in this Circuit. *Cf. Gordon*, 36 F.3d at 250 (discussing court-approved INS stipulation that alien's deportation would be stayed and his petition for review would "be held in abeyance until the Court has received and considered the decision on remand in *Esposito* "). As we have stated before, "[o]ur task ... is to insure that whatever compassionate conditions are written into the law are carefully adhered to, no matter how slim the alien's chances to escape deportation may be." *Rosario v. INS*, 962 F.2d 220, 221 (2d Cir.1992).

## CONCLUSION

Accordingly, we grant the application for a stay of deportation and we order that Mi-

---

7. The dissent challenges the grant of an All Writs Act stay of deportation in this case, in part, because Michael presented his substantive request for section 212(c) in a motion to reopen his deportation hearing. *See* Dissent at pps. 13–14. Citing *INS v. Abudu*, 485 U.S. 94, 110, 108 S.Ct. 904, 914–15, 99 L.Ed.2d 90 (1988), and *INS v. Doherty*, 502 U.S. 314, 321–25, 112 S.Ct. 719, 724–25, 116 L.Ed.2d 823 (1992), the dissent argues that motions to reopen "are disfavored" and, by implication, cannot serve as the basis for extraordinary relief as a matter of policy. Both *Abudu* and *Doherty*, however, involved aliens who had full hearings before an immigration judge, and exercised the opportunity to present their requests for relief at that time. *See Abudu*, 485 U.S. at 96 & n. 1, 108 S.Ct. at 907 & n. 1; *Doherty*, 502 U.S. at 317–21, 112 S.Ct. at 722–23. Thus, the statements in these cases regarding the disfavored status of motions to reopen reflect a proper concern for procedural abuse and dilatory tactics. Since Michael's motion to reopen came only after the IJ refused to postpone decision until Michael's delayed motion papers arrived in the mail, those concerns are not implicated here.

8. In concluding that a stay under the All Writs Act may issue, we by no means intend to create a method by which aliens contesting deportation may circumvent our holding in *Garay*. *See* 23 F.3d at 746 (holding that discretionary stay denials by an IJ or the BIA may only be reviewed in conjunction with a final order denying reopening). It is only when no other means of review are available, as they are not in this case because of its unusual procedural history, that the All Writs Act becomes available. This, of course, is what the Third Circuit indicated in *Reid*, and it is what we hold today.

chael's deportation be stayed pending the disposition of his appeal before the BIA. In the event that the BIA renders a decision adverse to Michael, this order is to remain in effect to permit Michael to seek review of the BIA's ruling in this Court in the manner provided by 8 U.S.C. § 1105a(a)(1).

JACOBS, Circuit Judge, dissenting:

I respectfully dissent. It is possible that this Court has the raw power to issue this writ, but—if we do—every prudential consideration argues against it. Notwithstanding the majority's recitation that this case is "unique," no special circumstance argues for extraordinary relief here. Certainly, Michael's case for section 212(c) relief has no visible appeal. The criteria for issuance of a stay are treated by the majority in a way that ignores the heightened requirements for relief under the All Writs Act, and facilitates and incites forum shopping for immigration law among the federal circuits. One result, if the majority's position gains a foothold, is that Immigration Judges ("IJ") become subject to reversal when they rule in accordance with the law of the circuit in which they sit— as they are obliged to do. Thus more sand is put in the gears of the country's immigration apparatus. Another result is that circuits may be drawn into a ridiculous tug of war over immigration cases.

**Background**

Michael served a sentence for criminal possession of a loaded shotgun, grand larceny of an automobile, and unauthorized use of a vehicle. His police record reflects arrests for numerous other offenses, the charges for which were evidently dropped in exchange for his guilty pleas to these three offenses. Upon Michael's release from prison, the INS initiated a deportation proceeding. He was detained briefly at the Federal Detention Center in Oakdale, Louisiana, before posting bond and returning to his residence in Brooklyn, New York. On July 7, 1994, Michael's counsel express-mailed a motion to the Immigration Judge. The only relief

sought was a change of venue so that the deportation proceeding would be conducted by an Immigration Judge in New York. In support of that motion, Michael's lawyer argued that, in the Second Circuit, relief under section 212(c) was not foreclosed to aliens convicted of firearms offenses. Thus this venue motion—which did *not* seek relief under section 212(c)—was purely an exercise in forum shopping.[1] Those motion papers did not arrive in time for the July 12 deportation hearing. Michael's lawyer telephoned the Immigration Judge the day before the hearing to urge a postponement in light of the motion in transit. The Immigration Judge did not postpone the proceeding, and found Michael deportable. The appropriate order of deportation was duly entered.

At that juncture, the Act offered Michael two options for pursuing review while enjoying in effect an automatic stay:

(A) Michael could have appealed the deportation order to the BIA, thereby preventing the deportation order from becoming final, *see* 8 C.F.R. § 243.1, and he would have enjoyed an automatic stay under 8 U.S.C. § 1105a(a)(3) during any circuit court appeal from an adverse BIA determination. He chose not to do so. The majority states that he made this choice "because his motion raising the request for section 212(c) relief was not part of the administrative record...." However, at that time, there *was* no "motion raising [a] request for section 212(c) relief." There is nothing in the record before us to indicate that Michael has ever made a motion under section 212(c).

(B) Alternatively, Michael had the opportunity to petition the IJ for discretionary relief under section 212(c). 8 U.S.C. § 1182(c). Had he made this election, his deportation proceedings would have been delayed, and would—during the course of any appeals—have been automatically stayed. *See* 8 C.F.R. § 3.6(a) (stay during appeal to BIA); 8 U.S.C. § 1105a(a)(3) (stay during appeal from adverse BIA de-

---

**1.** The proposed change of venue did not implicate the statutory right of appeal to the alien's home circuit, since that right arises only after administrative appellate review by the BIA. *See* 8 U.S.C. § 1105a(a)(2).

cision). Michael did not avail himself of this stay either.

Instead, Michael chose to petition the IJ to reopen the proceedings so that the IJ could consider the motion to change venue, and possibly to consider directly a (by then belated) motion for section 212(c) relief.[2] Incidental to this motion to reopen, Michael also requested a stay of deportation—a decision that, when incidental to motions to reopen, is committed to the discretion of the IJ. *See* 8 C.F.R. § 242.22. On August 19, 1994, the IJ denied Michael's motion to reopen the proceedings.

On August 23, Michael's lawyer filed an application with the New Orleans District Director of the INS, seeking a stay of deportation pending Michael's appeal to the BIA of the IJ's denial of the motion to reopen. The next day, Michael's lawyer filed papers with the BIA, challenging the refusal to reopen, and also requesting a stay. Several weeks later, Michael—appearing *pro se*—filed a petition for a writ of habeas corpus in the United States District Court for the Southern District of New York, requesting a stay of deportation. Although a District Director's denial of a discretionary stay pending appeal from an IJ's refusal to reopen can be challenged on habeas petition, Michael's habeas petition was premature because the INS District Director had not yet rejected Michael's application. *See* 8 U.S.C. § 1105a(a)(10); *Garay v. Slattery*, 23 F.3d 744, 745–46 (2d Cir.1994). These defects in the petition—rather than lack of a lawyer—may account for Michael's appearance *pro se* in New York. The petition was assigned to

Judge Koeltl, who concluded that the Southern District of New York was not the proper court in which to bring this petition, and entered an order on September 19, 1994 transferring the petition to the Western District of Louisiana.[3]

Two days after entry of Judge Koeltl's transfer order, Michael filed a *pro se* notice of appeal of that order in the Southern District. Incidental to this appeal, Michael filed in this Court a motion seeking: "stay of deportation petition for review." That is the application that the majority has alchemized into a petition under the All Writs Act. The stay motion was initially referred to Judge Miner of this Court, who granted the stay and then lifted it after the Western District of Louisiana promptly denied the transferred petition for habeas relief. On November 23, 1994, this matter appeared on the Court's *pro se* motions calendar. Thereafter the majority issued a stay of deportation. The United States voiced an informal objection, noting that it did not realize the request for a stay—granted and then lifted by Judge Miner—was still a live issue. In response, the original order was vacated, and a new order issued, temporarily continuing the stay of the original order and granting the INS an opportunity to submit a brief. After briefing, a stay of deportation was issued on January 19, 1995 (presumably a writ of prohibition under the All Writs Act) pending the disposition of Michael's appeal before the BIA, and the parties were advised that written opinions would follow.

2. The IJ's decision reflects that section 212(c) relief was requested, but the supporting affidavit of Michael's lawyer on the motion to reopen characterizes the underlying motion as one for a change in venue only: "2. On or about July 7, 1994 respondent mailed express mail a Motion for Change of Venue with supporting documents showing respondent['s] possibility for 212(c) relief.... 12. Since respondent, a resident of New York City has a potential 212(c) relief, the Court should grant respondent's request for change of venue." Evidently, Michael and his lawyer wished to delay any findings or rulings on a section 212(c) motion until it could be decided by another IJ, in New York.

Michael's habeas petition also makes clear that the underlying motion was one for change of

venue only: "On 7/12/94, the [Immigration] Judge ordered me deported over the objection of my attorney who had asked for a postponement because the Court had not yet received the attorney's motion for change of Venue with supporting documents which stated that I had a non frivolous claim for potential relief relating [to] my eligibility for 212(c) relief for weapon conviction."

3. Judge Koeltl stated in his order that he was transferring for lack of jurisdiction, which in my view was sound. The authority cited in the order is 26 U.S.C. § 1406(a), which concerns transfers for lack of venue. It is clear that this was also correct, since venue did not lie in the Southern District, and was clearly proper in the Western District of Louisiana.

### Analysis

At the time the majority issued the writ of prohibition, there was nothing before this Panel. Two issues had been presented: (1) an appeal of a transfer order, and (2) a motion for a stay, filed incidental to that appeal. As to the transfer order, Judge Koeltl committed no error, and section A of the majority opinion demonstrates that the appeal from the transfer order was frivolous. *See Chapple v. Levinsky*, 961 F.2d 372, 374 (2d Cir.1992) (per curiam) (no appellate jurisdiction over transfer orders). As to the stay, Judge Miner granted one and promptly dissolved it after the Western District of Louisiana rejected Michael's habeas petition. Any appeal from that order denying the habeas petition lies in the Fifth Circuit, where Michael was free to seek a stay pending appeal.

I disagree with the unstated premise of the majority that Michael requested a stay pending disposition of Michael's administrative appeal of the IJ's denial of his motion to reopen the deportation proceedings. The only sensible understanding of Michael's motion is a request for a stay incidental to his (frivolous) appeal from Judge Koeltl's transfer order. The motion said nothing about the pending administrative proceedings; all it stated was: "stay of deportation petition for review." The only thing Michael submitted for our review was the transfer order. In any event, no petition for a writ in aid of this Court's jurisdiction to hear a direct appeal from the BIA would come to us on an appeal from the district court. Courts should be liberal in construing *pro se* papers, but should not invent them. (Here, of course, Michael did not lack counsel; his lawyer's non-appearance in New York may have to do with her unwillingness to file premature, baseless and frivolous papers.[4])

In my view, it was an abuse of discretion for the majority to issue a stay of any kind, let alone grant relief under the All Writs Act. Michael did not pursue any of the statutory opportunities for an automatic stay of deportation. He has the (apparently still unexercised) right to seek a stay from the Fifth Circuit on his appeal from the habeas petition originally lodged in the Southern District of New York. The only purpose of the writ issued by the majority is to facilitate forum shopping, as I think the majority opinion openly manifests. (Even assuming that Michael has a statutory right to appeal a final order of the BIA to this Circuit, it is forum shopping nonetheless: the availability of more than one forum is of course what creates shopping opportunities.) And the objective of that forum shopping is to achieve nothing more than delay. The majority concludes that Michael's chance for successful review of his section 212(c) petition is hopeless in the Fifth Circuit; for the same reason, his chances would be hopeless in the First, Seventh, Ninth and Eleventh Circuits as well. *See infra.* His chances are not quite hopeless in the Second Circuit; but the most he can achieve here ultimately is an order requiring the IJ to make a discretionary determination as to whether the deportation proceeding should be reopened. Depending on another series of contingencies, the IJ may ultimately get to decide, under section 212(c), whether Michael has demonstrated unusual and outstanding equities that would warrant a waiver of deportation. Michael gives us no reason to think that his case is a fair candidate for this exercise of discretion.

### A. The All Writs Act.

The All Writs Act provides (in relevant part):

"transcript of Court Records and *allow at least one month after receipt of transcript to file the appeal brief*" (emphasis added). It is therefore evident that Ms. Duteau was acting on Michael's behalf during the period in which Michael's habeas petition was prepared, filed and considered. Moreover, the habeas petition and the notice of appeal have earmarks of common origin: the same typeface and the same peculiar lack of any paragraph indentation.

---

4. The habeas petition, filed in the Southern District of New York on September 12, 1994, reflects that it was "Executed on 9/9/94." Michael's lawyer—Maggy T. Duteau of 377 Broadway in New York City—initiated Michael's appeal to the BIA on August 24, sixteen days before the habeas petition was executed. The BIA acknowledged receipt of the notice of appeal in a letter to Ms. Duteau on August 30. Her August 24 transmittal letter asked the Executive Office for Immigration Review to provide her with the

The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

28 U.S.C. § 1651(a). The Supreme Court has held that use of this statutory power extends to " 'those cases which are within [a court's] appellate jurisdiction although no appeal has been perfected.' " *FTC v. Dean Foods Co.*, 384 U.S. 597, 603, 86 S.Ct. 1738, 1742, 16 L.Ed.2d 802 (1966) (quoting *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 25, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943)). Thus, in a proper case, a federal appeals court may issue a writ in aid of prospective jurisdiction over the acts of an administrative agency. *See Arrow Transp. Co. v. Southern Ry.*, 372 U.S. 658, 671 n. 22, 83 S.Ct. 984, 991, 10 L.Ed.2d 52 (1963) (All Writs Act grants "a limited judicial power to preserve the court's jurisdiction or maintain the status quo by injunction pending review of an agency's action through the prescribed channels").

Courts should, however, exercise their All Writs power sparingly. An extraordinary writ is a "drastic" remedy "to be invoked only in extraordinary situations." *See Kerr v. United States Dist. Court for the N. Dist. of Cal.*, 426 U.S. 394, 402, 96 S.Ct. 2119, 2123, 48 L.Ed.2d 725 (1976) (mandamus); *see also, United States v. Santtini*, 963 F.2d 585, 594 (3d Cir.1992) ("the appropriate inquiry ... is whether *an* extraordinary remedy is available, not which"). "At an irreducible minimum, a petitioner must show its right to issuance of such a writ is 'clear and indisputable.' " *Airline Pilots Ass'n, Int'l v. Dep't of Transp.*, 880 F.2d 491, 503 (D.C.Cir.1989) (quoting *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 384, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953) (further citations omitted)). This case does not present an "extraordinary situation" that would warrant the exercise of such a drastic power.

The issuance of the "extraordinary" writ is limited to cases where "the party seeking issuance of the writ ha[s] no other adequate means to obtain the relief he desires." *Kerr*, 426 U.S. at 403, 96 S.Ct. at 2124. "[T]he scope of the all writs provision confine[s] it to filling the interstices of federal judicial power

when these gaps threaten[ ] to thwart the otherwise proper exercise of federal courts' jurisdiction." *Pennsylvania Bureau of Correction v. U.S. Marshals Serv.*, 474 U.S. 34, 41, 106 S.Ct. 355, 360, 88 L.Ed.2d 189 (1985) (citing *McClung v. Silliman*, 19 U.S. (6 Wheat) 598, 5 L.Ed. 340 (1821); *McIntire v. Wood*, 11 U.S. (7 Cranch) 504, 3 L.Ed. 420 (1813)). The majority recites that Michael has fallen into "the statutory cracks." There is no statutory crack; there is a statute. The statute creates certain opportunities for a stay of deportation, some of them automatic and some of them discretionary, and Michael has availed himself of none of them. A person who has exhausted every avenue of relief under the statute, or has elected not to pursue them for tactical reasons, cannot be said to have fallen between its cracks. The majority asserts that Michael "had no choice but to seek the reopening of his administrative proceedings in order to raise his section 212(c) claim." If so, that is only because he had failed to raise his section 212(c) claim at the hearing, which, it appears, Michael chose not to attend. Michael's counsel instead took the risk of moving to reopen *without* filing a petition for relief under section 212(c). Michael asked the IJ to reopen in order to consider the motion in the express mail package, which was a motion to change venue so that a motion for section 212(c) relief could be made before an IJ in New York. Michael has carefully avoided seeking section 212(c) relief pending the outcome of his bid to move his case from an IJ in Oakdale, Louisiana to one in New York City. This forum shopping is pernicious, and has nothing to do with an alien's right to elect appellate review in the alien's circuit of residence. Michael followed this programme with advice of his immigration lawyer, and thereby assumed the risk that his motion to change venue would be unsuccessful. Since a timely application for relief under 212(c) delays deportation, and Michael was free to seek that relief, I cannot agree with the majority's assertions that Michael was "necessarily prohibited ... from invoking the statute's automatic stay provision at that juncture," and that he had no "other adequate means to obtain the relief he desire[d]". On this basis alone, no extraordinary writ should issue.

The majority next asserts that "Michael .was effectively deprived of the statutory safety net that permits an alien to challenge an INS District Director's denial of a discretionary stay by way of *habeas* relief." The short answer to this is that Michael was deprived of no habeas right under the statute. To the contrary, his habeas petition was decided on the merits in the Western District of Louisiana, notwithstanding the fact that Michael originally filed his habeas petition prematurely (prior to a decision by the District Director), and in a court without jurisdiction or venue. After the premature habeas petition was transferred to the Western District of Louisiana, and decided on the merits, the District Director denied the stay, thereby setting the stage for a timely petition. The majority's difficulty lies not in the process afforded Michael—which was incontestably proper—but in the result.

The All Writs Act cannot be used to supplement statutory provisions for a stay:

> The All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling. Although the Act empowers federal courts to fashion extraordinary remedies when the need arises, it does not authorize them to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate.

*Pennsylvania Bureau of Correction,* 474 U.S. at 43, 106 S.Ct. at 361. However "inconvenient or less appropriate" the remedies available to Michael may seem to some, those are the remedies Congress provided to him. *See McFarland v. Scott,* —— U.S. ——, —— n. *, 114 S.Ct. 2568, 2576 n. *, 129 L.Ed.2d 666 (1994) ("Because the habeas statute itself addresses when district courts may order a stay of state proceedings, the All Writs Act ... does not provide a residual source of authority for a stay.") (O'Connor, *J.,* concurring in part, dissenting in part). "The All Writs Act is not a jurisdictional blank check which ... courts may use whenever they deem it advisable." *In re Agent Orange Prod. Liab. Litig.,* 996 F.2d 1425, 1431 (2d

Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1125, 127 L.Ed.2d 434 (1994).

The prudential concerns outlined above become all the more trenchant where All Writs power encroaches on the proceedings of an administrative agency:

> Use of the All Writs Act in connection with agency matters has been even more rare and the scope of relief granted in these cases has been narrow. The circumstances that will justify our interference with nonfinal agency action must be truly extraordinary, for this court's supervisory province as to agencies is not as direct as our supervisory authority over trial courts.

*Public Util. Comm'r of Or. v. Bonneville Power Admin.,* 767 F.2d 622, 630 (9th Cir. 1985) (citations omitted).

These concerns are even further magnified when it comes to the INS. The "basic purpose" of the deportation provisions of the Immigration and Nationality Act is to "expedite the deportation of undesirable aliens by preventing successive dilatory appeals to various federal courts." *Foti v. I.N.S.,* 375 U.S. 217, 226, 84 S.Ct. 306, 312, 11 L.Ed.2d 281 (1963); *see also Waldron v. I.N.S.,* 17 F.3d 511, 520 (2d Cir.) ("clear purpose of § 1105a was to expedite the deportation process by eliminating dilatory litigation practices") (Walker, *J.,* concurring), *cert. denied,* —— U.S. ——, 115 S.Ct. 572, 130 L.Ed.2d 489 (1994). With some exasperation, the Supreme Court has warned the lower courts that "[e]nforcing the immigration laws, and the conditions for residency in this country, is becoming more difficult. Moreover, the INS is the agency primarily charged by Congress to implement the public policy underlying these laws. Appropriate deference must be accorded its decisions." *I.N.S. v. Miranda,* 459 U.S. 14, 19, 103 S.Ct. 281, 284, 74 L.Ed.2d 12 (1982) (citations omitted).

The majority's use of the All Writs Act is also indefensible because the underlying proceeding involves a petition to reopen. "INS officials must exercise especially sensitive political functions ... and therefore the reasons for giving deference to agency decisions on petitions for reopening or reconsideration in other administrative contexts apply with even greater force in the INS context."

*I.N.S. v. Abudu,* 485 U.S. 94, 110, 108 S.Ct. 904, 915, 99 L.Ed.2d 90 (1988). "Motions for reopening of immigration proceedings are disfavored for the same reasons as are petitions for rehearing, and motions for a new trial on the basis of newly discovered evidence. This is especially true in a deportation proceeding where, as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States." *I.N.S. v. Doherty,* 502 U.S. 314, 323, 112 S.Ct. 719, 724–25, 116 L.Ed.2d 823 (1992) (citations omitted).

## B. The Majority's Analysis

The majority recites that, "[i]n determining whether to grant a discretionary stay of deportation under the All Writs Act, we are guided by the *same criteria* that generally govern the issuance of discretionary stays" (emphasis added). I disagree. The general categories of factors to be considered are essentially similar, but a party seeking All Writs relief must "satisfy 'the burden of showing that [his] right to issuance of the writ is *clear and indisputable.*'" *Kerr,* 426 U.S. at 403, 96 S.Ct. at 2124 (quoting *Banker's Life & Cas. Co. v. Holland,* 346 U.S. 379, 384, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953) (further citations omitted)) (emphasis added). Michael's six-word motion for a stay shows absolutely nothing, notwithstanding the fact that Michael had a lawyer throughout these tangled proceedings. The majority's "merits" analysis fails to apply the requisite heightened scrutiny, as shown by the majority's reliance on *Jenkins v. I.N.S.,* 32 F.3d 11, 14–15 (2d Cir.1994), for the listing of relevant considerations. *Jenkins* involved an application for a stay pending this Court's decision on the merits of an alien's petition for review of a BIA decision; the alien's petition for review was already before us, so no All Writs power was implicated.

Assuming *arguendo* that there is no substantive difference between the factors considered on an application under the All Writs Act and those considered on an application

for a stay in the more usual course, no stay is justifiable in this case.

1. *Irreparable harm.* On the first factor the majority ignores the availability of other avenues for relief during the course of Michael's deportation proceedings. For purposes of injunctive relief, the concept of irreparable harm includes a lack of legal alternatives. *See Town of Huntington v. Marsh,* 884 F.2d 648, 651 (2d Cir.1989) (collecting cases), *cert. denied,* 494 U.S. 1004, 110 S.Ct. 1296, 108 L.Ed.2d 473 (1990). Michael could have taken a direct appeal of the deportation order to the BIA; if he had, an automatic stay would have gone into effect. Alternatively, he could have conceded deportability and applied for a waiver of deportation under section 212(c); if he had done so on a timely basis, he would have delayed deportation; and if the application was denied, he would have enjoyed a stay of deportation during the pendency of his appeal. *See* 8 C.F.R. § 3.6(a) (stay during appeal to BIA); 8 U.S.C. § 1105a(a)(3) (stay during appeal from adverse BIA decision). Either alternative course would have preserved his statutory right of appeal to the circuit of his residence. Michael, however—with advice of a lawyer—elected to pursue neither of these paths. Moreover, Michael could have appealed the denial of his habeas petition by the Western District of Louisiana. Had he done so, he could have applied to the Fifth Circuit for a stay pending the appeal. He chose not to take this course either. Indeed, after the INS District Director denied Michael's application for a discretionary stay pending review by the BIA of the IJ's denial of the petition to reopen, Michael could have brought a proper petition for habeas corpus in the Western District of Louisiana. That is the statutory procedure for appealing the denial of a stay by the District Director. He does not appear to have taken this step either.[5]

Finally, Michael was free to pursue a discretionary stay in the Fifth Circuit pending an appeal from the denial of habeas relief in the Western District of Louisiana. The ma-

---

**5.** His first habeas petition was untimely; as I stated above, this alone warranted summary denial of the petition. However, Michael is currently in custody in Louisiana, and has had am-

ple opportunity to present the district court there with a proper, timely and well-documented habeas petition.

jority does not consider this a viable option because Fifth Circuit law forecloses section 212(c) relief to aliens convicted of firearms offenses. However, there is no reason Michael cannot ask the Fifth Circuit to consider, in exercising its discretion, Michael's possibility of prevailing on an appeal to his circuit of residency, if some different rule of law does or may apply there. In any event, the prospect that Michael will fail to win a stay within the framework of opportunities afforded by the statute does not remotely suggest the All Writs Act is a proper means of supplementing the statutory remedies.

2. *Success on the merits.* The majority concluded that Michael has made the requisite showing as to success on the merits, because the availability of section 212(c) relief for an alien convicted of unlawful possession of a firearm is an open question in this Circuit. I disagree, especially in light of the heightened burden required for All Writs relief. Every court to have considered this question has held that no waiver of deportation is available for such criminal aliens. *See Rodriguez–Padron v. I.N.S.,* 13 F.3d 1455 (11th Cir.1994); *Rodriguez v. I.N.S.,* 9 F.3d 408 (5th Cir.1993); *Campos v. I.N.S.,* 961 F.2d 309 (1st Cir.1992); *Cabasug v. I.N.S.,* 847 F.2d 1321 (9th Cir.1988); *see also Leal–Rodriguez v. I.N.S.,* 990 F.2d 939, 952 (7th Cir.1993) (adopting reasoning of *Campos* ). It cannot be said that Michael has even a substantial possibility of success on this question of law.

Michael's chances of success on an appeal from a BIA decision denying him an opportunity to reopen is diminished further by the very nature of the relief he is seeking. A petition to reopen is committed to the full discretion of the Attorney General (and, through the Attorney General, to the INS). Such petitions are disfavored. *See Doherty,* 502 U.S. at 322, 112 S.Ct. at 724. "There is no statutory provision for reopening of a deportation proceeding, and the authority for such motions derive solely from regulations promulgated by the Attorney General." *Id.* The regulations provide:

> Motions to reopen in deportation proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing; nor shall any motion to reopen for the purpose of affording the alien an opportunity to apply for any form of discretionary relief be granted if it appears that the alien's right to apply ... therefor was afforded him at the former hearing unless the relief is sought on the basis of circumstances which have arisen subsequent to the hearing.

8 C.F.R. § 3.2 (1994); *see also* 8 C.F.R. § 242.22 ("A motion to reopen will not be granted unless the immigration judge is satisfied that evidence sought to be offered is material and was not available...."). Michael's petition to reopen does not allege a change of conditions, or the discovery of any new evidence, that might support reopening the proceedings. Likewise, Michael had the opportunity to present an application for section 212(c) relief in the usual course *when* he was found deportable. He simply elected instead to pursue the more risky gambit of pursuing a change of venue. If and when this Court reviews the denial of Michael's motion to reopen, the anticipated question will be whether or not the INS abused the discretion confided to it. Michael's chances on appeal, given the standard expressed in section 3.2 of the regulations, appear dim to me.

The majority grounds its merits analysis on the fact that the IJ considered Fifth Circuit law, and did not consider Second Circuit law. How can this be an abuse of discretion? Nobody can doubt that, in deciding the motion to reopen, the IJ was *bound* to follow the law of the circuit in which he was sitting, and nobody disputes that, under Fifth Circuit law, Michael's firearms conviction precludes him from achieving section 212(c) relief, as the IJ properly concluded. Although this issue has not been settled in the Second Circuit, it has been decided in other circuits, all of which have concluded that this relief is not available to aliens in Michael's position. (See *supra* ). On any Second Circuit appeal from the motion to reopen, Michael will argue that the IJ abused his discretion in failing to consider Second Circuit law. How will he prevail on that

proposition when, as we all agree, there is no Second Circuit law on this issue? And, if Michael did prevail nevertheless, how would any IJ know thereafter what law to apply in light of an alien's ability to seek review in one of two or more circuit courts? (It is easy for the very rich and the very poor to claim multiple residences.)

The issuance of the writ presumes that we would review Michael's appeal—assuming he eventually takes one here—under Second Circuit law. I am not so sure. The majority cites *Rosendo–Ramirez v. I.N.S.*, 32 F.3d 1085 (7th Cir.1994), and *Maldonado–Cruz v. United States Dep't of Immigration and Naturalization*, 883 F.2d 788 (9th Cir.1989). However, both cases are distinguishable in significant respects. In each case, the alien had been taken to the Fifth Circuit for processing, but the alien had been released and was residing in another circuit at the time of appellate review. *See Rosendo*, 32 F.3d at 1091 ("as here, the petitioner [in *Maldonado*] had lived in one circuit prior to his apprehension and had resided there since release from INS custody"). Here, Michael is currently in INS custody in Louisiana. A second distinction is that there was no evidence of forum shopping by the alien in either *Rosendo* or *Maldonado*. *See Rosendo*, 32 F.3d at 1092 ("we need not fully consider the import of such practices here, since neither party appears to have engaged in forum-shopping...."). Finally, the procedural posture of this case is radically different: *Rosendo* and *Maldonado* involved direct challenges to final determinations of deportability by the INS. Here, the writ preserves Michael's appeal from the anticipated denial of a motion to reopen: a ruling that commands our highest level of deference. Neither case compels the conclusion that we will review according to Second Circuit law. Another root question is whether or not Michael, a deportable alien housed in Oakdale, Louisiana, is any longer a resident of the Second Circuit.

The majority opinion evaluates Michael's chances of success on the merits as though what he needs is our opinion on an open issue of law. This is a foreshortened view of success on the merits. Even assuming that we ultimately decide that Michael is eligible for 212(c) relief, Michael's chance of success cannot be evaluated without a showing on his part "that relief would be warranted if the proceedings are reopened." *Johnson v. I.N.S.*, 962 F.2d 574, 577 (7th Cir.1992). Michael's application for 212(c) relief reveals only the following: he has family in the United States, with whom he does not reside; he resides, apparently, with a "fiancee" in New York; he lived in Guyana until he was fifteen, before beginning his nine years residency in the United States; since becoming a guest in this country, he has collected three criminal convictions; he was employed in a variety of jobs between 1989 and 1994; his sole evidence of rehabilitation is a single visit to a probation officer in June 1994. These are not the unusual and outstanding equities that ordinarily lead to a discretionary waiver of deportation; claims far stronger have consistently been rejected by the BIA and upheld by the courts. *See, e.g., Zaluski v. I.N.S.*, 37 F.3d 72, 72–74 (2d Cir.1994) (per curiam) (30 year resident alien, who lived in United States since age one, and whose entire family resides in United States); *Douglas v. I.N.S.*, 28 F.3d 241, 243–44 (2d Cir. 1994) (19 year resident alien with 2 children who are U.S. citizens); *Arango–Aradondo v. I.N.S.*, 13 F.3d 610, 611 (2d Cir.1994) (27 year, HIV-positive resident alien).

3. *Injury to the INS.* The majority "can see no significant injury to the INS in this case should we grant a stay," and says no more on that subject. However, as we noted in *Jenkins*, "the issuance of a stay would detrimentally impact the INS by causing it to suspend execution of its deportation order, engage in another round of litigation, and incur the costs of further detention." *Jenkins*, 32 F.3d at 15.

4. *The Public interest.* The majority concludes that the public interest in this matter is served by this Court's resolution of "the open section 212(c) question." This is a juridically centered analysis of the public interest. There are, however, important public interests at stake. In enacting the Immigration and Nationality Act, Congress intended to "expedite the deportation of undesirable aliens by preventing successive dilatory ap-

peals to various federal courts." *Foti v. I.N.S.*, 375 U.S. 217, 226, 84 S.Ct. 306, 313, 11 L.Ed.2d 281 (1963). The issuance of the writ interferes with the internal operations of a politically sensitive agency performing one of the most basic roles of sovereignty. The majority believes that the public interest will be served by our resolving an open question of law. I believe that that is no basis at all for exercising our power under the All Writs Act. There is no such thing as interesting question jurisdiction.