**Benito RAMIREZ–CENTENO, Maria Caroline Zapata–Ovando, and Edgar Jose Ramirez–Zapata, Petitioners,**

v.

**Robert A. WALLIS, District Director, United States Immigration and Naturalization Service, Respondent.**

No. 96–3537–CIV.

United States District Court, S.D. Florida.

Feb. 26, 1997.

Alfonso Oviedo-Reyes, Miami, FL, for Petitioners.

Dexter A. Lee, Asst. U.S. Atty., U.S. Attys. Office, Deputy Chief, General Litigation, Miami, FL, for Respondent.

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND CLOSING CASE

NESBITT, District Judge.

This cause comes before the Court upon Petitioners' Petition for Writ of Habeas Corpus filed December 11, 1996. Petitioners requests that this Court enjoin their deporta-

tion pursuant to a "bag and baggage" order issued by Respondent on July 13, 1996.

Petitioners, Benito Antonio Ramirez–Centeno, Maria Carolina Zapata–Ovando, and Edgar Jose Ramirez–Zapata, are natives and citizens of Nicaragua. On February 5, 1990 they illegally entered the United States, without being inspected by immigration officers, near Brownsville, Texas. On February 1, 1991, a deportation hearing was conducted for the Petitioners in Miami, Florida before an Immigration Judge. In that hearing, Petitioners conceded deportability as charged, but Petitioner Benito Ramirez–Centeno ("Centeno"), on behalf of himself and the other Petitioners, applied for political asylum and withholding of deportation.

In support of the application for political asylum, Petitioner Centeno claimed that he was a member of the Nicaraguan Social Christian Party ("NSCP") from 1981 to 1985. During this time, the NSCP protested rule of the Sandinista regime. Petitioner Centeno then joined the Contras in 1985 and was then voluntarily demobilized by them in 1989. Petitioner Centeno claimed that he could not return to Nicaragua in 1991 because the Sandinista infrastructure still existed and he feared he could be subject to reprisals because of his previous political and military activities.

The Immigration Judge denied Petitioners' asylum claim because there was not any reasonable possibility that petitioner would be persecuted upon his return to Nicaragua. The Immigration Judge noted that while the Sandinistas still retained control of the armed forces and state security forces, there was no evidence that these armed forces were conducting systematic reprisals against former Contra members who had demobilized and reintegrated into society. Additionally, in 1990 President Chamorro was elected sending the Sandinistas out of political power in Nicaragua. The Judge did, however, grant the alternative petition for voluntary departure.

Petitioners appealed the decision to the Board of Immigration Appeals and on December 14, 1994, the Board affirmed the decision of the Immigration Judge and dismissed the appeal. The Board found that

the Immigration Judge correctly analyzed the issues and that the elected government of President Chamorro had continued in power for 4 years. Additionally, there was no evidence to show that the Sandinistas had sought to harm any individuals in similar situations to the Petitioner Centeno. Petitioners were once again permitted to depart voluntarily.

Petitioners then sought judicial review in the Court of Appeals for the Eleventh Circuit under 8 U.S.C. § 1105a. The case was dismissed on July 20, 1995 for want of prosecution. Accordingly, the Respondent issued warrants of deportation called "bag and baggage" orders on July 13, 1996 directing Petitioners to show up for deportation on August 14, 1996. Petitioners did not appear as directed and are not currently in custody.

Petitioners now request that this Court grant a writ of habeas corpus enjoining the Respondent from initiating deportation proceedings against them because Petitioners allege that they have a meritorious asylum claim and that Petitioner Centeno has an ongoing workman's compensation claim which is currently pending before the Court and deportation would hamper the case's prosecution. Respondent denies both of these claims and alleges that this Court lacks subject matter jurisdiction to hear these claims.

## DISCUSSION

## I. SUBJECT MATTER JURISDICTION

### A. SECTION 242(G) OF THE IMMIGRATION AND NATIONALITY ACT

█ Respondent claims that the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") divests this Court of jurisdiction to hear challenges based on decisions or actions of the Attorney General to execute removal orders against aliens. 110 Stat. 3009. The IIRIRA adds section 242(g) to the Immigration and Nationality Act which provides that:

Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against aliens under [The Immigration Act]

8 U.S.C. § 1252(g) (as amended by IIRIRA § 306(a)).

Respondent claims that this provision barred all claims as of September 30, 1996, when President Clinton signed the bill into law, because section 242(g) was intended to apply retroactively. That claim, however, fails to take into account that the general effective date of the IIRIRA, section 309(a), is "the first day of the first month beginning more than 180 days after the date of the enactment of this Act," or April 1, 1997. 110 Stat. 3009. The IIRIRA retroactivity provision states that "subsection (g) of section 242 of the Immigration and Nationality Act shall apply without limitations to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings under such Act." 110 Stat 3656. Thus there remains a question of statutory construction as to whether section 242(g) applies to a case which is brought and decided between the September signing date and the April date of enactment.

While the 11th Circuit has not yet passed on this issue, the Seventh Circuit, in *Lalani v. Perryman*, 105 F.3d 334, 336 (7th Cir. 1997), has held that the provisions of section 242(g) do not become applicable until April 1, 1997. In order to give the entire statutory language its own independent meaning, the Seventh Circuit held that on April 1, 1997 all cases filed and currently pending that fall within the boundaries of section 242(g) would be dismissed from federal court for lack of jurisdiction. *Id.* Until that time, however, federal district courts would still have jurisdiction to hear these cases. *Id.* This Court adopts the Seventh Circuits position and finds that the IIRIRA does not divest this Court of jurisdiction to hear this Petition. *See Jean–Baptiste v. Reno*, 96–CV–4077–SJ, 1997 WL 55472 at *3 (E.D.N.Y.1997); *Jorge Luis Rodriguez v. Wallis*, 96–CV–3518–ED (S.D.Fla.1997).

## B. HABEAS JURISDICTION

■ Respondent also contends that this Court lacks jurisdiction to hear this case because Respondent claims that the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), signed into law on April 24, 1996, effectively eliminated *all* habeas review of final deportation orders. 110 Stat. 1214. The AEDPA amended 8 U.S.C. § 1105a(a)(10) from reading:

> any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings.

to reading:

> any final order of deportation against an alien who is deportable by reason of having committed a criminal offense ... shall not be subject to review by any court.

8 U.S.C. § 1105a(a)(10) (as amended). 8 U.S.C. § 1105a(a) further provides that it is the "exclusive procedure for, the judicial review of all final orders." Respondent argues that since the old section 1105a provided the exclusive grant of jurisdiction to federal courts to hear habeas corpus petitions dealing with final orders of deportation, its revocation by amendment eliminated the right all together. The Eleventh Circuit has also not ruled on this issue, only applying section 1105a(a)(10) as it relates to aliens deportable by reason of criminal convictions. *See Boston–Bollers v. Immigration and Naturalization Service*, 106 F.3d 352, 354 n. 1 (11th Cir.1997). This Court, must therefore decide whether the amended section 1105a(a)(10) divests district courts of jurisdiction to hear habeas petitions from non-criminal deportation cases.

At the outset, is not clear that Congress intended to eliminate all review of final orders of deportation when it enacted the AEPDA. The amended language of section 1105a(a)(10) refers only to deportations as the result of criminal activity, while the original language referred to all deportations. 8 U.S.C. § 1105a(a)(10) (as amended). It is an axiomatic rule of statutory construction that courts should interpret statutes so as to give each word its own meaning and no language should be interpreted as superfluous. *United States v. Phipps*, 81 F.3d 1056, 1060 (11th Cir.1996). If the Court accepts Respondent's argument, merely deleting the old section 1105a(a)(10) would have eliminated the federal courts power to hear habeas petitions challenging final orders of deportation in their entirety. Yet Congress specifically replaced the old section 1105a(a)(10) with language that would seek to limit an already established role for the federal courts. Thus, if Congress had truly intended to eliminate all habeas petitions, it would have not inserted the language limiting the prohibition of the new section 1105a(a)(10) to only criminal offenses or it would have not amended the section at all, merely deleting it.

Congress itself apparently was dissatisfied with this ambiguity in the law and revisited this issue in the Omnibus Consolidated Appropriations Act (OCAA) of 1997 which was signed into law on Sept 30, 1996. 110 Stat. 3009–722. Section 671 of the OCAA titled "Miscellaneous Technical Corrections" amended recently enacted public laws to alleviate ambiguities in their codification. Subsection (C)(4) of Section 671 amended the AEDPA to retain the language of the old section 1105a(a)(10) and to merely insert the new language after the grant of habeas review.[1] While the OCAA is not effective until April 1, 1997, it is clear to this Court that Congress did not intend to eliminate habeas review of non-criminal final orders of deportation, and thus this Court will exercise jurisdiction over this case and address the merits of Petitioners' Petition.

## II. The Petition

Petitioners claim two grounds for habeas relief, that they would be eligible under INS policy for asylum as of February 5, 1997 and that Petitioner should be allowed to remain in the country during the pendency of his

---

1. Section 671(c)(4) of the OCAA reads:
   Section 440(a) of the AEDPA is amended by striking "Section 106 of the Immigration and Nationality Act (8 U.S.C. 1105a(a)(10)) is amended to read as follows:" and inserting

"Section 106(a) of the Immigration and Nationality Act (8 U.S.C. 1105a(a)) is amended by **adding** at the end the following:".
   110 Stat 3009–722 (emphasis added).

workman's compensation claim. The Respondent argues that neither of these claims provides Petitioners with the substantive rights necessary to maintain a habeas petition. While this Court does not find either the INS policy [2] or workman's compensation claim [3] meritorious grounds for habeas corpus relief, an analysis of these issues is inappropriate as habeas relief is unavailable when the Petitioners are not in custody.

 A final deportation order, without actual custody, is insufficient to provide petitioners with the standing to seek a writ of habeas corpus. *United States ex rel. Marcello v. District Director of Immigration & Naturalization Svc.*, 634 F.2d 964, 968 (5th Cir.1981) [4] The *Marcello* court held that 8 U.S.C. § 1105a required that individuals seeking relief from final orders of deportation must be in the actual custody of the Immigration and Naturalization Service and not merely preparing to be deported. *Id.* In reaching that conclusion, the court held that:

> it is ... plain that the Congress, when enacting section 1105a, did not see the mere existence of an outstanding deportation order against an alien as placing him in the status of "held in custody." Had it done so, a main procedural innovation of the enactment—eliminating resort to the district courts in the majority of cases— would have been an entire futility from its outset, since habeas in the district court would have been immediately available to all persons ordered deported, without any further assertion of "custody" over them, and resort to the district court routinely had, doubtless, by the delay-minded.

*Id.* at 970. Petitioners have not pled custody at all and are, in fact, not in custody right now. Thus, even if the Petitioners had meritorious grounds for their petition, the issuance of a writ of habeas corpus is improper at this time. *See Mbiya v. Immigration and Naturalization Service*, 930 F.Supp. 609, 612–613 (N.D.Ga.1996).

Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Petitioners' Petition for a Writ of Habeas Corpus is **DENIED WITHOUT PREJUDICE.** This case is **CLOSED** and all pending motions not otherwise ruled upon are **DENIED AS MOOT.**

**2.** *See Pasquini v. Morris*, 700 F.2d 658, 659 (11th Cir.1983).

**3.** *See Kladis v. INS*, 343 F.2d 513 (7th Cir.1965).

**4.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.