Mario CARAVANTES and Reina Garcia–Aguilar, Petitioners,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondents.

No. CIV 97–0384 PHX EHC.

United States District Court, D. Arizona.

May 6, 1997.

Christopher J. Brelje, Rebecca Lee Story, Lewis & Roca, Phoenix, AZ, Emilia C. Banuelos, Phoenix, AZ, for Petitioners.

Cynthia M. Parsons, U.S. Attorney's Office, Phoenix, AZ, for Respondents.

ORDER

CARROLL, District Judge.

Mario Caravantes ("Caravantes") and Reina Garcia–Aguilar ("Garcia"), natives and citizens of Guatemala, initiated this action on February 25, 1997 by filing an "Emergency Motion for Temporary Restraining Order for a Stay of Deportation." (Dkt. 1). On March 3, 1997, the INS was enjoined from deporting Caravantes pending a ruling on Petitioners' Motion to Reopen pending before the Board of Immigration Appeals ("BIA") and any appeal therefrom. On March 10, 1997, the INS was enjoined from taking into custody or deporting Garcia for the same reasons. (Dkt. 25).

The Court subsequently ordered the INS to show cause why Caravantes should not be released pending a ruling on the motion to reopen. The District Director responded that Caravantes had not exhausted his administrative remedies and that he was a flight risk. Caravantes was ordered to remain in custody pending submission of a written request for release to the District

Director and a decision by the Director. (Dkt. 31). The District Director subsequently denied Caravantes' request to be released, concluding that he posed a flight risk and was not otherwise entitled to release. (Dkt. 34).

Pending before the Court are Petitioners' "Motion to Set Custody Determination Hearing" (Dkt. 33) and Respondent's "Motion to Amend Judgment and Dissolve Injunctions." (Dkt. 35). Shortly before the hearing on these motions, Respondent filed a "Motion in Support of District Director Sonchik's Denial of Petitioner Mario Caravantes' Request for Release." The following day, Caravantes filed a "Response to the District Director's Order that He Should Be Held Without Bond."

## Background

Caravantes arrived in the United States on or about the January 15, 1990 from Guatemala. Garcia arrived in the United States on or about May 17, 1991. Both Caravantes and Garcia entered this country illegally. Caravantes and Garcia are common-law husband and wife and parents of a four-year old autistic son who was born in the United States.

On August 8 and 10, 1995, the Immigration and Naturalization Service ("INS") ordered Garcia and Caravantes respectively to show cause why they should not be deported for entering the United States without inspection by a United States Immigration Officer. Petitioners appeared *pro se* at a hearing before Immigration Judge Irene Weiss ("the IJ" or "Weiss") on September 6, 1995. At that hearing, Petitioners were furnished with a list of counsel with whom they could consult and given a continuance to obtain counsel.

Petitioners subsequently appeared before the IJ with counsel, Christopher Stender, on September 11, 1995, and a further continu-

ance was granted.[1] Petitioners, through counsel, filed an application for deferred status on November 1, 1995 based upon their son's handicap.

On April 8, 1996, Petitioners appeared with counsel, Ronald Flater, for their deportation hearing.[2] At the hearing, Petitioners, through counsel, conceded deportability but sought asylum, or alternatively, a voluntary leave date two years later so that their son could continue to receive treatment in the United States which was unavailable in Guatemala. (A transcript of the Decision of the IJ is attached to Petition).

In her order, the IJ noted the following facts. Caravantes testified that in 1989, he was taken to a guerrilla camp by 15 to 20 guerrillas and held for three days until he agreed to give them information about army personnel in the area.[3] After his release, Caravantes returned to his home, told his wife (Garcia) that he was leaving Guatemala. He made his way to the capital of Guatemala and left for the United States two or three days later.

Garcia testified that after Caravantes left, guerrillas questioned her every week or two about Caravantes' whereabouts and stole food she prepared for sale and by which she earned her living. These incidents were apparently never reported to the police or military. Petitioners testified that they believed that they would be harmed or killed if they returned to Guatemala by either the guerrillas or the army, based upon a perception that they had assisted the other side.

In her decision, the IJ noted that Petitioners had conceded the charges thus establishing deportability. The IJ denied the applications for political asylum concluding that Petitioners' experiences were similar to those of others in the area and that Petitioners had not expressed any political opinion

---

**1.** Petitioners aver that they met only briefly with Stender and agreed to pay $2,000 for representation. (Caravantes' Aff. at ¶ 6).

**2.** Petitioners contend that they conferred with Flater only 10–15 minutes immediately before the deportation hearing and that earlier attempts to discuss their case with Stender or other attorneys at his firm were rebuffed.

**3.** Petitioners contend that because counsel did not interview them about the facts of their case before the hearing, counsel failed to elicit from them at trial that Caravantes had been tied up, burned with cigarettes and cut, given no food and only water to drink, and threatened him with death following his release if he refused to inform the guerrillas of the army's movements.

or shown any reason they were singled out other than an attempt to recruit them. The IJ found that Petitioners were eligible for voluntary departure on or before May 8, 1996, and any extensions thereof.

Counsel for Petitioners timely filed an administrative appeal on their behalf. On January 6, 1997, the BIA dismissed Petitioners' administrative appeal. In dismissing the appeal, the BIA found that Caravantes had testified that he had been abducted by guerrillas, threatened with death if he did not collaborate with them, that he was only released after agreeing to do whatever they asked of him, and that he feared reprisals if he returned because he had not cooperated with them. The BIA further noted that Caravantes had testified that he believed that the military would also want to kill him based upon a perception that his absence was due to his cooperating with the guerrillas, *i.e.*, that he had been in hiding while working with the guerrillas. The BIA further noted Caravantes' belief that even if the military knew that he had been in the United States, they would impute the guerrillas' political opinions to him and kill him.

Although the BIA found Petitioners credible, it concluded that Petitioners failed to present significant evidence to support their claim that they would be persecuted by the military. The BIA further concluded that Petitioners had not established a well-founded fear of future persecution where such claim was based upon a single death threat six years before, no evidence had been introduced of continued interest in Caravantes, and Garcia had not herself been threatened before her departure.

On February 20, 1997 or 45 days after the BIA denied their appeal of the denial of their asylum application, Petitioners filed a "Motion to Reopen," based upon a claim of ineffective assistance of counsel, with the BIA and a request for stay of deportation with the District Director of the INS. (Ex. 2 to Motion). The District Director denied the request for stay based on her conclusion that there was little likelihood of success on the motion to reopen. Petitioners thereafter initiated this action to stay deportation pending resolution of the motion to reopen. The motion to reopen remains pending before the BIA.[4]

### Analysis

Respondent asks the Court to "amend judgment" citing Rule 60(b) of the Federal Rules of Civil Procedure and to dissolve the injunctions. Respondent argues that an intervening change in law, as interpreted by the Seventh Circuit in *Lalani v. Perryman*, 105 F.3d 334 (7th Cir.1997) and followed by the Ninth Circuit in *Fuchslocher v. INS*, 110 F.3d 1394 (9th Cir.1997) deprives this Court of jurisdiction to continue the injunctions.

In *Lalani*, petitioner-aliens sought an extension of their voluntary departure date from the District Director and were ordered to depart by March 15, 1996. On that date, Petitioners filed a complaint alleging violation of the Administrative Procedure Act ("APA") and petitioned for a writ of habeas corpus. The District Court granted the government's motion for judgment on the pleadings and dismissed the petitioners' complaint. The Seventh Circuit affirmed.

The Seventh Circuit analyzed the provisions of section 306(a) of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") which amends section 242 of the INA, 8 U.S.C. § 1252. Under this amendment, a new section 1252(g) is added which provides that:

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action of the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act.

105 F.3d at 336. The general effective date for the IIRIRA's amendments as expressed in section 309(a) is "the first day of the first month beginning more than 180 days after the date of the enactment of this Act," or April 1, 1997. *Id.* However, section 309(a) also states that the applicability of the gener-

---

**4.** The INS requested expedited consideration by the BIA on March 20, 1997; however, to date, no decision has been issued on the motion to reopen.

al date is superseded by section 306(c). *Id.* This section, as amended by technical corrections, provided that "the amendments made by subsections (a) and (b) shall apply as provided under section 309, except that **subsection (g) of section 242 of the Immigration and Nationality Act ... shall apply without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings under such Act.**" *Id.* (emphasis added).

The Seventh Circuit found that while section 306(c) was excepted from the general effective date of section 309, it failed to specify an alternative effective date, but instead referred back to section 309. The court found that:

> Reading section 306(c) in light of section 309 as directed, we conclude that the reference to subsection (g) in section 306(c) is meant only to provide an exception to section 309(c)'s general principle of non-retroactivity, so that when the [IIRIRA] comes into effect on April 1, 1997, subsection (g) will apply retroactively, unlike the other subsections. This interpretation gives meaning to each part of the statute. If we were to construe [IIRIRA] as [the respondent director] urges, the provisions of [IIRIRA] deferring application of its procedures for six months would have no meaning because we would have no jurisdiction in all cases immediately.

*Id.* Thus, the court held that Congress intended that revised § 1252(g) would become effective when the other provisions of section 309 became effective, *i.e.,* April 1, 1997.[5] *Id.* Other courts have agreed with the Seventh Circuit's analysis. *See Benziane v. INS,* 960 F.Supp. 238 (D.Colo.1997); *Ramirez–Centeno v. Wallis,* 957 F.Supp. 1267 (S.D.Fla. 1997).

The Seventh Circuit has subsequently held that § 1252(g)'s bar extends to all other statutory bases of jurisdiction, including habeas corpus jurisdiction under 28 U.S.C. § 2241, effective April 1, 1997. *Yang v. INS,* 109

F.3d 1185 (7th Cir.1997) ("[E]ffective April 1, 1997, § 306(a) of the [IIRIRA] abolishes even review under § 2241, leaving only the constitutional writ, unaided by statute.").

In *Fuchslocher,* the Ninth Circuit remanded a case to the District Court with directions to conduct a hearing on the merits to determine whether the court should grant a stay of deportation and to make such ruling before April 1, 1997, noting that: "The district court currently has jurisdiction" and citing *Lalani.*

■ Based on these decisions, Respondent argues that the Court is deprived of jurisdiction under the terms of § 1252(g) because it became effective on April 1, 1997 and applies retroactively to Petitioners' proceedings.

Petitioners agree that § 1252(g) became effective on April 1, 1997, but contend that it does not strip the Court of jurisdiction. They also argue that even if it otherwise would have stripped this Court of jurisdiction as of April 1, 1997, it does not do so in this case because the Court issued the injunctions before April 1, 1997 when the Court had jurisdiction to do so, and because the injunctions constitute final judgments. Petitioners contend that application of § 1252(g) as argued by the Respondent would violate the separation of powers doctrine based on Respondent's earlier motion that the injunctions constitute final judgments.

■ As an initial matter, preliminary injunctions were issued in this action pending a ruling on the Petitioners' motion to reopen or further order of the Court. These injunctions are not final judgments within the meaning of Rule 60(b). Thus, Petitioners' separation of powers arguments are inapposite to the facts of this case. Furthermore, although neither *Lalani* nor *Fuchslocher* addressed the scope and impact of § 1252(g) following April 1, 1997, the language of the statute itself, in conjunction with these decisions, makes it clear that as of April 1, 1997,

---

5. The court further found that the APA did not apply to deportation proceedings, and that if it did, agency action was committed to agency discretion by law. *Id.* at 337. The court did not address the request for habeas relief except to note that it had previously held that it lacked authority to review the INS's discretionary grant of voluntary departure and that because such decisions were unreviewable, no explanation for a denial of an extension was necessary. *Id.* at 338.

this Court was deprived of jurisdiction to enjoin deportation of Petitioners.

■ Petitioners argue that they may nevertheless seek habeas relief from this Court directly pursuant to Article 1 of the Constitution. Respondent counters that the only means to seek habeas relief directly pursuant to the Constitution is via the All Writs Act, 28 U.S.C. § 1651.

Section 1651 provides in relevant part that:

(a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

(b) An alternative writ or rule nisi may be issued by a justice or judge of a court which has jurisdiction.

Respondent argues that because the All Writs Act only applies where relief is sought in aid of a court's jurisdiction, and because appeal of deportation orders is only available in the Courts of Appeal, this Court cannot grant habeas relief pursuant to the Act because such relief would not be in furtherance of *this* Court's jurisdiction. The Court agrees.

Petitioners previously argued that the IIRIRA did not repeal by implication this Court's power to prevent the INS from taking measures, including deportation, that will deprive it of current or prospective jurisdiction citing *Michael v. INS,* 48 F.3d 657 (2d Cir.1995) and *Kyei v. INS,* 65 F.3d 279, 284 (2d Cir.1995).

In *Michael,* the Second Circuit found that the All Writs Act provided the Courts of Appeal with an independent statutory basis to stay deportation, pending ruling on a pending motion to reopen, to safeguard its appellate jurisdiction. 48 F.3d at 661.

In *Kyei,* the Second Circuit declined to stay deportation pursuant to the All Writs Act pending resolution of a motion to reopen because the petitioner had not otherwise sought a stay of deportation. 65 F.3d at 284. *See also Reid v. INS,* 766 F.2d 113, 116–17 n. 9 (3d Cir.1985) (where alien "will be deported before the BIA has ruled finally on the motion to reopen," the Court of Appeal may enter a stay under the All Writs Act); *Dabone v. Karn,* 763 F.2d 593, 597 n. 2 (3d Cir.1985) (28 *U.S.C. §* 1651 gives court power to preserve its ability to pass on motion to reopen before it becomes moot by deportation) *Cf. Blancada v. Turnage,* 891 F.2d 688, 690–91 (9th Cir.1989) (under the law in effect at that time, District Court could stay deportation pending ruling on motion to reopen, where motion to reopen involved nonfrivolous constitutional challenge to deportation order on issue undecided by the Court of Appeals or the Supreme Court).

These cases support that the Courts of Appeal have authority pursuant to the All Writs Act to stay deportation pending a ruling of the BIA on a motion to reopen, in aid of the Courts' appellate jurisdiction. Because District Courts do not have jurisdiction to hear appeals of motions to reopen, a stay of deportation pending such ruling would not be in aid of this Court's jurisdiction. Respondent's motion to dissolve the injunctions will be granted.

Respondent consented at hearing on the pending motions to a brief stay of deportation to permit Petitioners to seek a stay of deportation from the Ninth Circuit Court of Appeals. Respondents further represented that the INS would not deport Petitioners during the pendency of such request. Based upon these representations, the Court will stay deportation of Petitioners for ten (10) days from the date of this Order to enable them to seek a stay of deportation from the Ninth Circuit.

**IT IS ORDERED** granting the Respondent's Motion to Dissolve the Injunctions, effective ten (10) days from the date of this order. (Dkt. 35).

**IT IS FURTHER ORDERED** denying other pending motions as moot.