United States Court of Appeals,

Eleventh Circuit.

No. 95-5555.

Herve AUGUSTE, Plaintiff-Appellee,

v.

ATTORNEY GENERAL, United States, Janet Reno, Immigration & Naturalization Service, United States, District Director for the Immigration and Naturalization Service, Walter Cadman, Defendants-Appellants.

Aug. 1, 1997.

Appeal from the United States District Court for the Southern District of Florida. (No. 95-2001-CIV-SH), Shelby Highsmith, Judge.

Before TJOFLAT and EDMONDSON, Circuit Judges, and O'NEILL[*], Senior District Judge.

TJOFLAT, Circuit Judge:

The Attorney General of the United States appeals a decision from the Southern District of Florida granting habeas corpus relief to Herve Auguste, a French citizen ordered to be deported by the Immigration and Naturalization Service ("INS"). We vacate the judgment and remand the case with instructions that the district court dismiss Auguste's claim as moot.

I.

Under the Visa Waiver Pilot Program ("VWPP"), 8 U.S.C. § 1187 (1994), an alien from a qualifying country who meets certain requirements not relevant here may enter the United States without a visa for no more than ninety days if the alien waives "any right ... to contest, other than on the basis of an application for asylum, any action for deportation against the alien." 8 U.S.C. § 1187(b)(2). On October 13, 1994, Auguste entered the United States pursuant to the VWPP after

---

[*]Honorable Thomas N. O'Neill, Jr., Senior U.S. District Judge for the Eastern District of Pennsylvania, sitting by designation.

signing a waiver form. He remained in the United States beyond his ninety-day period, which expired on January 12, 1995. While in the country, he obtained a fraudulent work permit and Social Security card and signed a contract to purchase a hotel in Pompano Beach, Florida, for $7.3 million.

The Border Patrol eventually located him in his residence and took him into custody on September 4, 1995. That day, Walter Cadman, District Director of the INS, issued an order of deportation because Auguste violated the conditions of his admission to the United States under the VWPP by staying beyond ninety days. No hearing was held.[1] Cadman scheduled Auguste's deportation for September 12, 1995.

On September 12, Auguste filed a petition for a writ of habeas corpus in the District Court for the Southern District of Florida. He alleged, *inter alia,* that his waiver of any right to a deportation hearing was not "knowing and intelligent." The district court granted a stay of deportation and, after conducting emergency hearings on September 12 and 15, found "the record woefully inadequate to support a finding that Herve Auguste made an intelligent and knowing waiver of his due process right to deportation proceedings." It therefore granted Auguste's petition and ordered that formal deportation proceedings be conducted and Auguste be released on bond pending conclusion of the proceedings. The Attorney General appeals from this judgment.

---

[1]Cadman was following the procedures outlined in the INS regulations that were promulgated pursuant to the VWPP. These regulations state in relevant part:

> An alien who has been admitted to the United States under the provisions of [the VWPP] who is determined by an immigration officer to be deportable from the United States ... shall be removed from the United States to his or her country of nationality or last residence. Such removal for deportation shall be determined by the district director who has jurisdiction over the place where the alien is found, and shall be effected without referral of the alien to an immigration judge for a determination of deportability....

8 C.F.R. § 217.4(c) (1997).

II.

At the time Auguste filed his petition in the district court, judicial review of INS orders of deportation was governed by section 106 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1105a (1994). That section provided, *inter alia,* that "any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings." § 1105a(a)(10). Auguste sought relief pursuant to this provision.[2]

On September 30, 1996, President Clinton signed into law the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Div. C, Omnibus Appropriations Act, 1997, Pub.L. No. 104-208, 1996 U.S.C.C.A.N. (110 Stat.) 3009-546. Section 306 of the IIRIRA completely restructured judicial review of deportation orders, which were renamed "orders of removal." That section repealed section 106 of the INA (8 U.S.C. § 1105a) in its entirety, *see* § 306(b), 1996 U.S.C.C.A.N. (110 Stat.) at 3009-612, and replaced it with a new section 242, *see* § 306(a), 1996 U.S.C.C.A.N. (110 Stat.) at 3009-607 to -612 (codified at 8 U.S.C.A. § 1252 (West Supp.1997)). Amended section 242(g), titled "Exclusive Jurisdiction," now states:

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings,

---

[2]Auguste's counsel filled out and filed a standardized form created by the Administrative Office of the United States Courts for state prisoners seeking a writ of habeas corpus under 28 U.S.C. § 2254 (1994). On the top of the form, the number 2254 was crossed out and the number 2241 was handwritten above, suggesting that Auguste sought a writ of habeas corpus under 28 U.S.C. § 2241 (1994).

> A review of the district court record reveals, however, that Auguste's petition has been consistently treated as a petition for relief pursuant to 8 U.S.C. § 1105a(a)(10). The district court explicitly refers to Auguste's petition as a § 1105a petition in its memorandum opinion and elsewhere. Moreover, Auguste's petition and the arguments he presented in the district court, in his appellate brief, and at oral argument on appeal all indicate that he is seeking judicial review of his deportation order under section 106 of the INA.

adjudicate cases, or execute removal orders against any alien under [the INA].

Pub.L. No. 104-208, § 306(a)(2), 1996 U.S.C.C.A.N. (110 Stat.) at 3009-612 (codified at 8 U.S.C.A. § 1252(g)).

This section went into effect on April 1, 1997. *See INS v. Yang,* --- U.S. ----, ---- n. 1, 117 S.Ct. 350, 352 n. 1, 136 L.Ed.2d 288 (1996); *Ramirez-Centeno v. Wallis,* 957 F.Supp. 1267, 1269 (S.D.Fla.1997). Pursuant to the IIRIRA, section 242(g) applies "without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings under [the INA]." § 306(c)(1), 1996 U.S.C.C.A.N. (110 Stat.) at 3009-612. Auguste's petition is clearly a "claim by [an] alien arising from the decision ... by the Attorney General to ... execute removal orders against [the] alien under" the INA, as contemplated by section 242(g). Thus, since April 1, 1997, no court has had jurisdiction to review Auguste's deportation order, except as provided by newly amended 8 U.S.C.A. § 1252.

Under the INA, as amended by the IIRIRA, the only form of judicial review of orders of removal is the method of review provided by chapter 158 of Title 28 of the United States Code, with several modifications. *See* 8 U.S.C.A. § 1252(a)(1).[3] This review can only be initiated in a court of appeals. *See* 28 U.S.C. § 2342 (1994); 8 U.S.C.A. § 1252(b)(2). Auguste did not comply with

---

[3]This section states:

> Judicial review of a final order of removal (other than an order of removal without a hearing pursuant to section 1225(b)(1) of this title[) ] *is governed only by* chapter 158 of Title 28, except as provided in subsection (b) of this section and except that the court may not order the taking of additional evidence under section 2347(c) of Title 28.

8 U.S.C.A. § 1252(a)(1) (emphasis added). Section 1225(b)(1), which deals only with aliens seeking admittance into the United States, clearly does not apply in the instant case.

this procedure,[4] as he filed his petition with the district court.[5]  We therefore lack jurisdiction over this appeal.

At oral argument,[6] Auguste's counsel argued that section 1252(g) did not deprive us of jurisdiction in this case.  He made two arguments, one statutory and one constitutional.  As a matter of statutory interpretation, he argued that section 1252(d) provided jurisdiction.  That section states:

> A court may review a final order of removal *only if*—
>
> (1) the alien has exhausted all administrative remedies available to the alien as of right, and
>
> (2) another court has not decided the validity of the order, unless the reviewing court finds that the petition presents grounds that could not have been presented in the prior judicial proceeding or that the remedy provided by the prior proceeding was inadequate or ineffective to test the validity of the order.

8 U.S.C.A. § 1252(d) (emphasis added).  Far from creating some new method of judicial review in addition to the "only" method prescribed by 8 U.S.C.A. § 1252(a)(1), this section merely provides two procedural rules for a court already invested with jurisdiction (i.e., a court of appeals reviewing an order of removal pursuant to 8 U.S.C.A. § 1252(a)).  Any other interpretation would render meaningless the restrictions on judicial review contained in both sections 1252(a)(1) and 1252(g).

---

[4]We presume, without deciding, that the new judicial review scheme applies to orders of removal issued pursuant to the VWPP. Whether or not judicial review under 8 U.S.C.A. § 1252 is available for aliens who are ordered removed pursuant to the VWPP, it is clear that no other form of judicial review is authorized.

[5]This "mistake" is certainly not Auguste's or his counsel's fault:  the IIRIRA was not enacted until September 30, 1996, more than a year after Auguste filed his petition pursuant to the then-in-force judicial review procedures of the INA.

[6]The IIRIRA was signed into law after the parties submitted their briefs.  Counsel for the Attorney General brought the judicial review provisions of the IIRIRA to our attention, as well as to Auguste's attention, in a letter dated October 31, 1996. Oral argument was held on November 20, 1996.  Given this schedule, we did not ask the parties to brief the jurisdictional issue.  Because the parties adequately addressed the issue at oral argument and because we view the language of the IIRIRA to be unambiguous, we have not requested supplemental briefs.

Auguste's counsel also argued that the Constitution prohibits Congress from removing all judicial review of orders of removal.  He based his arguments on the principle of separation of powers and the Fifth Amendment's Due Process Clause.  Another panel of this circuit recently addressed and rejected these exact arguments in a similar challenge to a provision of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104-132, 1996 U.S.C.C.A.N. (110 Stat.) 1214.  *See Boston-Bollers v. INS,* 106 F.3d 352, 355 (11th Cir.1997) (per curiam).  In that case, the panel analyzed the constitutionality of section 440(a)(10) of the AEDPA, which removed all judicial review from final orders of deportation against aliens who have committed certain criminal offenses.  *See id.* at 354.

We find that this analysis applies with equal force in the instant case.  "[T]he responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches [as opposed to the judicial branch] of the Federal Government.  Over no conceivable subject is the legislative power of Congress more complete."  *Reno v. Flores,* 507 U.S. 292, 305, 113 S.Ct. 1439, 1449, 123 L.Ed.2d 1 (1993) (internal quotation marks and citations omitted).  For this reason, section 1252 "not only does not violate Article III, it is illustrative of the concept of separation of powers envisioned by the Constitution."[7]  *Boston-Bollers,* 106 F.3d at 355.

The due process argument is equally unavailing.  "The power to expel aliens, being essentially a power of the political branches of government, the legislative and the executive, may

---

[7]We note that this case does not involve a petition for the Great Writ protected by the Constitution, *see* U.S. Const., art.  I, § 9, cl.  2 ("The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."), and codified by 28 U.S.C. § 2241 (1994).  While Auguste's petition below was labeled " § 2241," it clearly sought judicial review of an INS decision.  *See supra* note 2. Indeed, Auguste freely admits that he is an alien who was admitted into the country under the provisions of an immigration statute, specifically the VWPP, and that his current detention and imminent deportation are authorized by that same statute.  We find it difficult to imagine a court granting the Great Writ under these circumstances.

be exercised entirely through executive officers, with such opportunity for judicial review of their action as congress may see fit to authorize or permit." *Carlson v. Landon,* 342 U.S. 524, 537, 72 S.Ct. 525, 532-33, 96 L.Ed. 547 (1952) (internal quotation marks omitted). Moreover, because the deportation of an alien is neither a criminal proceeding nor punishment, "[n]o judicial review is guaranteed by the Constitution." *Id.* at 537, 72 S.Ct. at 533. In short, section 1252 does not deny an alien due process "[b]ecause the Constitution does not give aliens the right to judicial review of deportation orders." *Boston-Bollers,* 106 F.3d at 355. We therefore conclude that section 1252 constitutionally deprives us of jurisdiction to hear Auguste's claim.

III.

Our conclusion that we lack jurisdiction to adjudicate this appeal leaves us with two options. We could simply dismiss the appeal for lack of jurisdiction and allow the district court's order to stand unreviewed. Alternatively, we could vacate its order and remand the case with the instruction that the district court dismiss Auguste's petition for lack of jurisdiction. The District of Columbia Circuit recently faced this same dilemma. *See Ramallo v. Reno,* 114 F.3d 1210 (D.C.Cir.1997). We find its analysis of the former disposition instructive:

> To hold that we lack jurisdiction to enter any order affecting the judgment of the District Court would create an anomalous situation: a judgment of the District Court, with respect to a matter over which it now has no jurisdiction to hear, would escape appellate review, because the newly amended section 242 took effect after the issuance of the decision in the District Court. We doubt that Congress meant to countenance such a result. Rather, given the firm command of 8 U.S.C. § 1252(g), we believe that Congress intended to afford this court residual jurisdiction to clear the decks of cases in which the District Court has entered judgment, but in which there can be no review by the Court of Appeals due to its lack of jurisdiction pursuant to IIRIRA.

*Id.* at 1213. We are persuaded by this analysis and adopt it as our own.

We further agree with that court that exercising this "residual jurisdiction" is "something akin to an appellate court's jurisdiction when a case becomes moot between the time a district court

judgment is entered and the time it arrives at the appellate court for review." *Id.* We therefore choose the disposition appropriate in such cases. *See, e.g., Adler v. Duval County Sch. Bd.,* 112 F.3d 1475, 1478 (11th Cir.1997).

Therefore, we VACATE the district court's judgment and REMAND the case with the instruction that the district court dismiss Auguste's petition.

SO ORDERED.